IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CV-139-FL

| | |
|---|---|
| DAVID E. COLBURN, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| HICKORY SPRINGS ) | |
| MANUFACTURING COMPANY, ) | |
| HICKORY SPRINGS ) | ORDER |
| MANUFACTURING COMPANY ) | |
| SUPPLEMENTAL EXECUTIVE ) | |
| RETIREMENT PLAN, THE ) | |
| COMPENSATION COMMITTEE OF THE ) | |
| BOARD OF DIRECTORS OF HICKORY ) | |
| SPRINGS MANUFACTURING ) | |
| COMPANY, as Administrator of the ) | |
| Supplemental Executive Retirement Plan, ) | |
| ) | |
| Defendants.[1] ) | |

This matter is before the court on plaintiff's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (DE 54). The issues raised have been briefed fully, and in this posture, are ripe for ruling. For the following reasons, plaintiff's motion for judgment on the pleadings is denied.

---

[1] The court constructively amends its case caption to reflect dismissal of former defendants David F. Underdown, J. David Cartwright, Darrell Bryant, Bobby Bush, Mark Jones, and Robert Simmons, where the court dismissed the only claims asserted against them on March 24, 2020. The court also amends its case caption to reflect dismissal of counterclaims asserted by defendant Hickory Spring Manufacturing Company and crossclaims asserted by plaintiff.

**STATEMENT OF THE CASE**

Plaintiff initiated this action April 9, 2019, and filed the operative amended complaint May 2, 2019, under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 et seq., seeking recovery of retirement benefits under a Supplemental Executive Retirement Plan ("SERP"). On motion of defendants Hickory Springs Manufacturing Company ("HSM"), compensation committee of HSM's board of directors ("compensation committee"), and HSM SERP (collectively "defendants"), and former defendants Mark Jones, Darrell Bryant, Robert Simmons, J. David Cartwright, Bobby Bush, and David F. Underdown, the court dismissed all of plaintiff's claims except his claim for improper denial of benefits in violation of ERISA § 502(a)(1). Shortly thereafter, the court entered its case management order, under which discovery closes March 24, 2021, and dispositive motions are due April 24, 2021.

On April 7, 2020, plaintiff moved for judgment on the pleadings on his sole remaining claim. Defendants responded in opposition on April 18, 2020, and plaintiff replied on April 28, 2020, relying upon exhibits including 1) Wilkerson v. RBC Centura Banks, Inc. et al, 4:01-CV-163-H, (E.D.N.C. April 4, 2003) and 2) Rhoda v. Rhoda, 14-CV-6740-CM, (S.D.N.Y. June 22, 2017).

**STATEMENT OF FACTS**

The alleged facts pertinent to plaintiff's remaining claim may be summarized as follows. Defendant HSM is a large furniture manufacturing company with principle place of business in Hickory, North Carolina. (Am. Answer. (DE 34) ¶¶ 2, 17).[2] Plaintiff joined defendant HSM's

---

[2] As stated in more detail herein, in ruling on a motion for judgment on the pleadings, the court must accept the nonmovant's allegations as true and view the facts in the light most favorable to the nonmoving party. See Nat'l Metro. Bank v. United States, 323 U.S. 454, 456–57 (1945); see also Bradley v. Ramsey, 329 F. Supp. 2d 617, 622 (W.D.N.C. 2004).

board of directors and defendant compensation committee in 2010, and on January 1, 2012, he became defendant HSM's president and chief executive officer. (Id. ¶¶ 19, 22). In 2012, defendant compensation committee discussed rewarding defendant HSM's officers who performed well but received less compensation than their peers, and it determined that any compensation plan must have a "cash neutral" effect on defendant HSM. (Id. ¶¶ 28, 41). Thereafter, plaintiff met with Bob Donovan ("Donovan"), defendant HSM's financial advisor, to discuss such compensation plan. (Id. ¶¶ 30-31).

On August 24, 2012, Donovan presented a plan to defendant compensation committee, under which defendant HSM would award 10 SERPs. (Id. ¶ 44). Donovan represented to defendant compensation committee that the plan would be cash neutral to defendant HSM if defendant HSM purchased a life insurance policy on each SERP beneficiary. (Id. ¶¶ 41-42). According to Donovan, the insurance premiums and the retirement benefits paid would be recouped in total by the death benefit payable to defendant HSM upon each SERP beneficiary's death. (Id. ¶¶ 42-43). Defendant compensation committee unanimously approved the SERP proposal, and on December 11, 2012, defendant HSM's board of directors ratified the action of defendant compensation committee. (Id. ¶¶ 48, 61).

Plaintiff attaches his SERP agreement to his amended complaint, excerpts of which are copied below:

Section 1. Supplemental Retirement Benefit. If the Executive remains in continuous employment with the Company for the period beginning on October 1, 2012, and ending on the date that the Executive attains age sixty-seven (67), the Company shall pay to the Executive a supplemental retirement benefit. Payment of such supplemental retirement benefit shall be made in equal monthly installments on the first day of each month and continuing for a period certain of 120 months, commencing as of the first day of the calendar month next following the date he attains (or, in the case of his death, would have attained) age sixty-seven (67). The amount of the supplemental retirement benefit shall be $41,666.67 per month. If the Executive terminates continuous employment prior to attainment of age sixty-seven (67) for any reason other than for "cause," including death, the Executive shall be entitled to receive a percentage of such supplemental retirement benefit determined by dividing the number of complete months of employment with the Company that the Executive has rendered since October 1, 2012, at the time of his termination of employment with the Company, by the total number of complete months between October 1, 2012, and the first day of the calendar month next following the date he attains age sixty-seven (67). If the Executive dies before the date as of which benefit payments under this Agreement are completed, any remaining payments shall be paid to the Executive's beneficiary (as designated pursuant to Section 4). If the Executive's continuous employment with the Company is terminated by the Company for "cause," the Executive shall immediately forfeit any right to receive a benefit under this Agreement and no benefit payment shall be made to him or for his benefit under this Agreement. For purposes of this Agreement, termination employment for "cause" shall occur when termination results from Employee's (a) criminal dishonesty; (b) refusal to perform his duties hereunder on substantially a full-time basis; (c) refusal to carry out general policies and directions as established by the Board of Directors of the Company (the "Board") from time to time; or (d) engaging in any conduct which could be materially damaging to the Company without a reasonable good faith belief that such conduct was in the best interest of the Company. The determination of whether a termination is for cause shall be made by the Board acting in good faith.

Section 8. Administration by Committee.

8.1 Except as otherwise specifically provided in this Agreement, this Agreement shall be administered by the Compensation Committee of the Board (the "Committee"). The Committee shall be responsible for the general administration and interpretation of the Agreement and for carrying out its provisions, except to the extent all or any of such obligations are specifically imposed on the Board.

8.2 The Committee shall maintain full and complete records of its deliberations and decisions. The minutes of its proceedings shall be conclusive proof of the facts of the operation of the Agreement. The records of the Committee shall contain all relevant data pertaining to the Executive's rights under the Agreement.

8.4 The Committee may correct errors and, so far as practicable, may adjust any benefit or payment accordingly. The Committee may in its discretion waive any notice requirements in the Agreement; provided, that a waiver of notice in one or more cases shall not be deemed to constitute a waiver of notice in any other case. With respect to any power or authority which the Committee has discretion to exercise under the Agreement, such discretion may be exercised in a discriminatory manner as between this Agreement and other similar agreements in effect at the Company.

8.5 Subject to the claims procedure set forth in Section 10, the Committee shall have the duty and discretionary authority to interpret and construe the provisions of the Agreement and to decide any dispute which may arise regarding the rights of Executive hereunder, which determinations shall be binding and conclusive upon all interested persons.

(Am. Compl., Ex. 1(DE 6-1)).

4

Upon plaintiff's retirement on June 30, 2015, plaintiff began receiving payments under his SERP. (Am. Answer (DE 34) ¶ 67). However, his payments ceased after September 1, 2016, and in letter dated September 29, 2016, defendant HSM informed plaintiff that he was no longer entitled to receive benefits under his SERP. (Id. ¶¶ 68, 74). Plaintiff initiated the claims and appeal process set forth in his SERP, and on January 24, 2017, defendant compensation committee sent plaintiff a letter, explaining the reasons underlying its benefits decision and indicating that the approval of his SERP was voidable. (Id. ¶¶ 77, 80).

## DISCUSSION

A.   Standard of Review

"After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In reviewing a motion for judgment on the pleadings, the court "appl[ies] the same standard as a 12(b)(6) motion to dismiss." Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012) (citing Burbach Broad. Co. of Delaware v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002)). The court assumes the facts alleged by the nonmoving party are true and all reasonable inferences are drawn the nonmoving party's favor. See Nat'l Metro. Bank v. United States, 323 U.S. 454, 456–57 (1945); Beal v. Missouri Pac. R. R. Corp., 312 U.S. 45, 51 (1941); Volvo Constr. Equip. N. Am. v. CLM Equip. Co., Inc., 386 F.3d 581, 591 (4th Cir.2004). "A motion for judgment on the pleadings should be granted when . . . the movant has clearly established that no material issue of fact remains and that the movant is entitled to judgment as a matter of law." Schnuck Markets, Inc. v. First Data Merchant Services Corp., 852 F.3d 732, 737 (8th Cir. 2017); see Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014).

B.   Analysis

Here, plaintiff seeks judgment on the pleadings with respect to his claim for improper denial of benefits under his SERP. The United States Supreme Court set forth the standard of review that applies to a denial of benefits for most ERISA plans in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Under the Firestone standard, a court reviews challenges to a denial of benefits "under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone, 489 U.S. at 115.

However, as determined in the court's March 24, 2020, order, plaintiff's SERP constitutes an unfunded, deferred-compensation plan, a specific type of ERISA plan known as a "top-hat plan." Circuits have split over the standard of review that applies to a top-hat plan administrator's denial of benefits. See Plotnick v. Comput. Scis. Corp. Deferred Comp. Plan for Key Exec., 875 F.3d 160, 165 (4th Cir. 2017). The Seventh and Ninth Circuits have applied the Firestone standard of review to denial of benefits under top-hat plans. See Comrie v. IPSCO, Inc., 636 F.3d 839, 842 (7th Cir. 2011); Sznewajs v. U.S. Bancorp Amended & Restated Supp. Benefits Plan, 572 F.3d 727, 733 (9th Cir. 2009). In so doing, the Seventh Circuit explained "Firestone tells us that a contract conferring interpretive discretion must be respected, even when the decision is to be made by an ERISA fiduciary." Comrie, 636 F.3d at 842. Since top-hat plans lack fiduciary administrators, "it is easier, not harder . . . , to honor discretion-conferring clauses in contracts that govern the actions of non-fiduciaries." Id.

In contrast, the Third and Eighth Circuits have held that denials of benefits under top-hat plans should be reviewed de novo because top-hat plans are unilateral contracts that should be reviewed in accordance with ordinary principles of contract law. See Craig v. The Pillsbury Non– Qualified Pension Plan, 458 F.3d 748, 752 (8th Cir. 2006); Goldstein v. Johnson & Johnson, 251

6

F.3d 433, 443 (3d Cir. 2001). Finally, the First Circuit declined to decide which standard of review applied, finding that the two standards presented a distinction without a difference. See Niebauer v. Crane & Co., Inc., 783 F.3d 914, 923 (1st Cir. 2015). As the First Circuit explained, even in circuits that employ de novo review, courts apply a deferential standard when the plan gives discretion to the plan administrator, because under ordinary contract principles, a grant of discretion is enforceable and merely requires that the discretion be exercised reasonably, in good faith. Id.

In Plotnick, the only opinion by United States Court of Appeals for the Fourth Circuit to have addressed this issue, the Fourth Circuit considered a district court's approach to the standard of review, which largely "mirrored" that of the First Circuit. Plotnick, 875 F.3d at 166. After noting that "under either an abuse of discretion or a contract based standard, a 'reasonable' exercise of discretion would stand", the district court analyzed the reasonableness of the top-hat plan administrator's decision by applying the eight factors set forth in Booth v. Walmart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335 (4th Cir. 2000). Declining to decide which standard of review applied, the Fourth Circuit affirmed the district court's approach. Id. As such, where plaintiff's SERP confers discretion upon defendant compensation committee, as plan administrator, to interpret and construe its terms, the court will evaluate the reasonableness of defendant compensation committee's decision through application of the Booth factors. (See Am. Compl., Ex. 1 (DE 6) ¶ 8.5).

Defendants argue, and the court agrees, that information integral to the court's decisional process is not before the court. In particular, in order to evaluate the reasonableness of defendant compensation committee's decision pursuant to the Booth factors, the court will need to review the administrative record of the denial of benefits and plaintiff's appeal. See Booth, 201 F.3d at

7

342–43 (4th Cir. 2000) (listing "the adequacy of the materials considered to make the decision and the degree to which they support it" and "whether the decision making process was reasoned and principled" among factors courts consider when determining the reasonableness of an administrator's decision). Although plaintiff argues he is entitled to benefits under the plain language of his SERP, the language of the plan is just but one of the eight Booth factors. See id. As such, plaintiff's motion must be denied, where plaintiff's desired relief cannot be granted on the pleadings alone.

Cases relied on by plaintiff are procedurally distinguishable, and therefore, do not compel a contrary result. See Kemmerer v. ICI Americas Inc., 70 F.3d 281 (3d Cir. 1995) (affirming district court's decision on full record following trial); Marsh Supermarket, Inc. v. Marsh, 977 F. Supp. 2d 890 (S.D. Ind. 2013) (rendering decision on post-trial motions following jury's findings of fact); Shepherd v. Cmty. First Bank, No. 8:15-CV-04337-DCC, 2019 WL 1405849, at *14 (D.S.C. Mar. 28, 2019) (determining the reasonableness of the administrator's decision on cross motions for summary judgment upon consideration of the administrative record); Pratt v. Petroleum Prod. Mgmt. Inc. Emp. Sav. Plan & Tr., 920 F.2d 651, 653 (10th Cir. 1990) (affirming district court's decision on cross motions for summary judgment following hearing); Wilkerson v. RBC Centura Banks, No. 4:01-CV-163-H(4) (E.D.N.C. April 7, 2003) (determination made on cross motions for summary judgment).

Plaintiff also argues that he entitled to a judgment on the pleadings based on his contention that an agreement setting compensation is not voidable under North Carolina law. As an initial matter, the court doubts whether state law applies to this issue. See Plotnick, 875 F.3d at 166 ("This court applies the federal common law of contracts to interpret ERISA plans.") (internal quotations omitted); Tingle v. Pac. Mut. Ins. Co., 996 F.2d 105, 110 (5th Cir. 1993) (holding that

ERISA preempted state law governing rescission of insurance policy based upon prior misrepresentations, because although ERISA is silent on misrepresentation, Congress intended that "a federal common law of rights and obligations under ERISA regulated plans would develop"); see also Clyde A. Wilson Int'l Investigations, Inc. v. Travelers Ins. Co., 959 F. Supp. 756, 759 (S.D. Tex. 1997) (federal common law applies to cases involving rescission of an ERISA regulated insurance policy). Indeed, in its March 24, 2020, order, the court determined that ERISA preempted defendants' state law counterclaims for rescission of the SERP and constructive fraud. In any event, this is just one factor for consideration upon a more complete record. Accordingly, plaintiff's motion for judgment on the pleadings is denied.[3]

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings is DENIED. (DE 54).

SO ORDERED, this the 4th day of December, 2020.

                                                LOUISE W. FLANAGAN
                                                United States District Judge

---

[3] Where the court finds that an inadequate record precludes plaintiff's desired relief, the court does not reach additional arguments raised by defendants as to why plaintiff's motion should be denied. Moreover, the court reserves ruling on the adequacy of defendant's affirmative defenses, where those defenses do not impact the disposition of the instant motion, in light of the court's ruling herein.